DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1924.

---

## W. H. Watkins, Appellee, v. D. L. Dunbar, Appellant.
### Gen. No. 7,650.

1. REPLEVIN—*sufficiency of proof of justification by defendant as de jure officer.* In an action of replevin against one claiming to have seized the property in question as sheriff by virtue of an execution, defendant's character as a *de jure* officer under his defense of justification is sufficiently shown where it was stipulated before trial that he was sheriff, that fact was admitted by plaintiff in his replication to the plea of justification, and by both parties on the witness stand, although there is no direct evidence thereof.

2. REPLEVIN—*when seizure by sheriff sufficiently shown under plea of justification.* In an action against one claiming to have seized the property in question as sheriff by virtue of an execution, possession of the property by defendant is sufficiently shown where that fact is alleged in the affidavit for replevin by the plaintiff and also in the declaration and evidence thereof was given by plaintiff although that offered by defendant failed to show that he had ever taken possession of the property.

3. CHATTEL MORTGAGES—*loss of lien as against levying officer under execution.* A chattel mortgagee of farm property is shown to have lost his lien under the mortgage, as against an execution in the hands of defendant as sheriff, by failure to take and retain possession of the mortgaged property, where the evidence shows that the mortgagor was the mortgagee's son who was heavily

Vol. CCXXXII 1.

(1)

indebted to the execution creditor and that the mortgage was admittedly made to defeat the claims of such creditor although given to secure a bona fide indebtedness, and there was no visible change of possession either at the time of the giving of the mortgage or at a subsequent date when a foreclosure sale is claimed to have been made at which the mortgagee was the sole purchaser.

4. CHATTEL MORTGAGES—*lien as dependent upon validity of acknowledgment.* A chattel mortgagor is required to acknowledge the mortgage before the justice of the peace of the town wherein such mortgagor resides or before the county judge of such county, under the provisions of Cahill's Ill. St. ch. 95, ¶¶ 1, 2, relative to the acknowledgment of chattel mortgages and requiring acknowledgment to be made before a justice of the peace or the county judge "where the mortgagor resides," and a mortgage acknowledged before a justice of another town than that in which the mortgagor resides gave the mortgagee no lien as against an execution creditor, where the goods in question were at the time of the execution and acknowledgment of the mortgage subject to the lien of such creditor's execution.

5. SAVING QUESTIONS FOR REVIEW—*sufficiency of proposition to preserve question.* In an action of replevin by one claiming as chattel mortgagee in possession after foreclosure sale against a sheriff in possession under an execution, the invalidity of the chattel mortgage for want of acknowledgment before the proper justice of the peace is raised by the proposition, "The chattel mortgage * * * is void in so far as it affects any interests and property levied upon by the sheriff, * * * upon execution issued," which the trial court refused to hold, even though the question was not directly raised.

Appeal by defendant from the Circuit Court of Christian county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the October term, 1923. Reversed with finding of facts. Opinion filed January 10, 1924. *Certiorari* denied by Supreme Court (making opinion final).

HOGAN & REESE, for appellant.

LESLIE J. TAYLOR, for appellee.

MR. PRESIDING JUSTICE HEARD delivered the opinion of the court.

Grover C. Watkins, son of appellee, is a farmer near Mt. Auburn, Christian county, Illinois, and was largely indebted to the Mt. Auburn State Bank on

judgment notes given by him to said bank. On the 26th day of September, 1921, a judgment by confession was entered in the circuit court of Christian county upon said notes in favor of the Mt. Auburn Bank against said Grover C. Watkins for the sum of $2,782.75 and execution immediately issued to the sheriff of said county thereon. On the 28th day of September, 1921, a motion was filed by Grover C. Watkins in the circuit court of said county to open up the judgment and for leave to plead in said cause and by agreement of the parties levy of the execution was stayed until a hearing of said motion. On the 12th day of December, 1921, this motion to vacate the judgment was withdrawn and the parties consented that the amount of the judgment be reduced by the sum of $37.50 which had been included as attorney's fees and a judgment by agreement was entered on that day for the original amount of the notes with interest to date which amounted to the sum of $2,784.90. Thereupon the court directed that the former execution be recalled and the former judgment vacated and set aside. An execution was issued upon the new judgment to appellant, as sheriff of said county, and he thereupon returned the former execution to the clerk of the court. On March 11, 1922, appellee, as sheriff of said county, levied said execution upon the property in question and advertised it for sale on the 21st of March, 1922, the sale to be held at the residence of Grover C. Watkins. The sale was thereafter continued until the 31st of March, 1922, and again to April 10, 1922, at which time it was continued to July 1, 1922.

On the 12th day of December, 1921, at 9:30 a. m., appellee, who is the father of Grover C. Watkins, filed for record in the recorder's office of Christian county a chattel mortgage purporting to have been given by said Grover C. Watkins to appellee and covering all of the property in question. The mortgage was dated December 12, 1921, purporting to secure the promis-

sory note of Grover C. Watkins to appellant for the sum of $4,000, dated December 12, 1921, which mortgage was prepared by the attorney for Grover C. Watkins. Appellee claims to be the owner of the property in question by virtue of a foreclosure sale under said mortgage had on the 25th of March, 1922.

June 21, 1922, appellee brought suit in replevin for the personal property in question, and in his declaration alleged that appellant on the 11th day of March, 1922, took and unjustly detained the property in question. To this declaration appellant filed four pleas, viz.: *non cepit, non detinet,* property in the Mt. Auburn State Bank and a fourth plea of justification alleging that the appellant seized the property as sheriff by virtue of an execution issued in favor of the Mt. Auburn State Bank and against Grover C. Watkins. Issues were formed, a trial by jury waived and the cause was heard before the court, the issues found for appellee and judgment entered against appellant in the usual form in replevin, from which judgment this appeal is taken.

In a replevin suit a defendant who seeks to justify under a plea of being an officer with an execution and levying upon the property of a third person, must support such plea by evidence showing a valid judgment, a valid execution, that the property is subject to the lien of said execution and that he, the defendant, was a *de jure* officer unless the necessity of such proof is obviated by the pleadings in the case.

It is contended by appellee that appellant did not prove that he was a *de jure* officer and that, therefore, his defense of justification failed. Before the commencement of the trial it was stipulated that Dunbar was sheriff. Appellee's replication to appellant's fourth plea admitted that he was sheriff. When appellee was on the witness stand, in reply to an interrogatory of his attorney, he testified that appellant was sheriff, and when appellant was examined as a

witness he testified, without objection, to his official capacity. While this evidence was not the best evidence under these circumstances, appellee cannot now be heard to urge that there was no proof of the official capacity of appellant. (*Jones v. McGuirk,* 51 Ill. 382.)

It is also urged by appellee that there is no evidence that the appellant ever took possession of the property in question. In his affidavit for replevin, appellee swore that appellant "wrongfully detains the said goods and chattels from this plaintiff" and in his declaration filed in the cause it is stated that appellant "wrongfully took and wrongfully detains" the goods and chattels in question. These were essential and material allegations of plaintiff's declaration and were appellee's contention true, we would be obliged to reverse the judgment on account of his failure to prove these necessary, essential elements. It is true that at the close of appellee's case in chief, the evidence failed to show that appellee had ever taken possession of the property, but that proof was supplied by appellant.

It is claimed by appellant that the mortgage in question was void as to the creditors of Grover C. Watkins. It is undoubtedly the law that a financial transaction involving the giving of a chattel mortgage by a son to his father, when the son is heavily involved financially and insolvent, should be closely scrutinized by the court especially when the action of such mortgage as held to be valid would defeat other creditors. Appellee introduced evidence tending to show an indebtedness on the part of his son to him, but while he introduced notes as evidence of such indebtedness, he was unable to give the items of the consideration of the notes or the amount in which his son was indebted to him. As a witness, he admitted that the mortgage was given for the purpose of preventing the Mt. Auburn State Bank from collecting the judgment which they had against the son.

The property in question was all upon the farm used and occupied by Grover C. Watkins and after appel-

lee claimed to have taken possession of the property under his mortgage on March 10, 1922, it remained on that same farm up until the time of the alleged sale and while appellee claims that a hired man of Grover C. Watkins was appointed custodian of the property, there was no visible change in the possession of the property but it was used by Grover C. Watkins the same as before. At the alleged sale of March 25, 1922, none of the property was purchased by persons other than appellee. After the alleged sale, the property remained in the possession of Grover C. Watkins, appellant testifying "that he loaned it to the boy to finish his crops with."

In *Martin v. Duncan,* 156 Ill. 274, in passing upon the question as to what constituted taking possession of mortgaged personal property by a mortgagee, the Supreme Court said: "It was therefore important in this case, as sustaining the validity of the transfer to defendant in error, to show that he was in possession when the property was attached; that there had been a change of possession. Up to May 16, defendant in error had been in possession as agent of his brother, and if, on May 28, he was in possession for himself, the change in the character of the possession should have been indicated by such outward, open, actual and visible signs as could be seen and known to the public, or persons dealing with the goods. (*Claflin v. Rosenberg,* 42 Mo. 439.)"

In *Funk v. Staats,* 24 Ill. 632, the court said: "In determining whether the property in this case was, in good faith, reduced to possession by the mortgagee, the court had the right to consider all the circumstances attending the transaction. And a sufficient delivery and possession on a sale of chattels, to operate against creditors and purchasers, will be sufficient on a foreclosure of a chattel mortgage. The reason of the rule in the one case is the same as in the other, and hence a delivery and possession which will sustain the one will be sufficient in the other."

In *Ticknor v. McClelland,* 84 Ill. 471, and in many other cases it has been held that any sale of personal property, where it remains with the vendor, if it is of that character of property that is capable of being removed, is fraudulent in law as to creditors.

In 35 Cyc. 304, it is said: "In order to pass title as against creditors of or subsequent purchasers from the seller the delivery must be a delivery in its natural sense, that is, a change of possession, and that there must be an actual, visible and continuous change of possession, such as to apprise those accustomed to deal with the seller that the ownership of the goods is changed, or in other words such a manifest, continued and open change of possession as to indicate to the world a change of title; and so it is not sufficient that there has been an actual delivery and actual change of possession if the goods are returned to the apparent possession of the seller so as to indicate there had been no actual change of title."

In Jones on Chattel Mortgages, sec. 375, it is said: "A delivery and possession, which would be sufficient to operate against creditors and purchasers on a sale of personal property, is sufficient on foreclosure of a mortgage. The mortgaged property need not in all cases be removed from the premises of the mortgagor, particularly if it is so heavy that its removal would be difficult and expensive. If the mortgagee keeps it under his control, that is sufficient. There must be something more than a mere formal and temporary change of possession. There must be a real, permanent delivery and change of possession in order to preserve the lien of the mortgage."

In *George Walter Brewing Co. v. Lockery,* 134 Wis. 81, 114 N. W. 120, in construing a statute providing that no mortgage of chattels shall be valid as against another than the mortgagor, if unrecorded, unless possession be delivered to and retained by the mortgagee, the court said: "It has been many times declared by this court, both before and since *Morrow v. Reed* (30

Wis. 81) that the possession necessary to give validity to a chattel mortgage like that essential under section 2310 (Stat. 1898), to preclude presumption of fraud in a sale, must be actual, open, unequivocal and exclusive, and accompanied by the ordinary indicia of ownership and control such that those familiar with the situation would naturally draw the inference of a change of ownership. *Manufacturers' Bank v. Rugee,* 59 Wis. 221, 18 N. W. 251; *Schneider v. Kraby,* 97 Wis. 519, 73 N. W. 61; *Missinskie v. McMurdo,* 107 Wis. 578, 83 N. W. 758. The delivery required by these statutes is intended as evidence to the world that from the time thereof the grantee or the mortgagee has acquired from the grantor the ownership and control of the property. It differs radically from that mere technical delivery which, as between the parties, is held to evince intent to presently change the title in contradistinction from a mere agreement to transfer some time in the future.''

Applying the rules of law above stated to the present case, we are of the opinion that defendant in error lost the lien of his chattel mortgage as against the execution in the hands of appellee, if he had such lien, by not taking and retaining possession of the mortgaged property as required by law.

Assuming, however, for the sake of argument that appellee did have a chattel mortgage upon the property in question valid as against Grover C. Watkins upon a good consideration and that the sale was properly made and that thereafter appellee did take possession of the property, the mortgage in question was not valid as against the rights and interests of the Mt. Auburn State Bank.

The judgment of September 26, 1921, was not vacated until after the rendition or substitution of a new judgment therefor in the same suit on December 12. The execution issued under the former judgment was not returned by the sheriff until after the receipt by

him of an execution issued under the new judgment. An execution upon a judgment is a lien upon and binds the goods and chattels of the person against whom it is issued from the time it is delivered to the sheriff to be executed. (Section 9, ch. 77, Rev. St., Cahill's Ill. St. ch. 77, ¶ 9.) There was therefore no instant of time from the time the first execution was issued until the levy was made upon March 12, 1922, when the goods and chattels of Grover C. Watkins were not subject to the lien of a judgment of the Mt. Auburn State Bank against him by virtue of an execution in the hands of the sheriff. This was true at the time of the execution and recording of the mortgage in question.

The mortgage in question was not valid as against the lien of these executions for the reason that it was not acknowledged in accordance with law. The evidence shows that Grover C. Watkins was a resident of Mt. Auburn, a town in Christian county, while the mortgage was acknowledged before a justice of the peace in the town of Taylorville, in said county.

The statute of this State with reference to the acknowledgment of chattel mortgages has been changed many times. One of the most efficient means in ascertaining the legislative intent of a statute is to consider it with reference to the state of the law before its adoption, and particularly with reference to the previous legislation on the same subject. (*Wright v. People,* 101 Ill. 136.)

An act of the legislature in force July 1, 1881, with reference to the acknowledgment of chattel mortgages, provided: "Sec. 2. Such an instrument shall be acknowledged before a justice of the peace of the town or precinct where the mortgagor resides, or, if there be no acting justice of the peace in the town or precinct where the mortgagor resides, the instrument may be acknowledged before the county judge of the county where the mortgagor resides."

This section was amended July 1, 1903, so as to read: "Sec. 2. Such instruments shall be acknowledged before a justice of the peace of the county where the mortgagor resides or before the county judge of the county in which the mortgagor resides."

This section was again amended on July 1, 1905, so as to read: "Sec. 2. Such instruments shall be acknowledged before a justice of the peace or the county judge of the county where the mortgagor resides."

On July 1, 1915, this section was again amended so that on December 12, 1921, at the time of the giving of the chattel mortgage in question, sections 1 and 2 of chapter 95, Rev. St. [Cahill's Ill. St. ch. 95, ¶¶ 1, 2] provided with reference to the acknowledgment of chattel mortgages by residents of the State of Illinois: "Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That no mortgage, trust deed or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purpose of this Act, be deemed a chattel mortgage.

"Section 2. **Acknowledgment.** Such instruments shall be acknowledged before a justice of the peace or the county judge where the mortgagor resides," etc.

It is a rule of the construction of statutes that when the legislature has amended a statute it was their intention thereby to change the law on that subject, and it is the duty of the court in construing such statutes to give force and effect to such change. It is also a rule of law that in construing a statute the court should have in mind the evil which is sought to be remedied by the amendment of the statute.

Under the law as it stood prior to July 1, 1915, and after July 1, 1903, a chattel mortgage could be acknowledged by a resident debtor before any justice of the peace in the county in which the mortgagor resided. In many of the counties of the State there are very many townships, some of them very remote from the county seat, and to ascertain whether the property of one's debtor was free from chattel mortgage incumbrance required an examination of the docket of every justice of the peace in the county in which the debtor resided. This was the mischief which was to be remedied by the amendment of July 1, 1915, and this mischief was remedied by the legislature striking out of the prior section the words "of the county" and requiring such chattel mortgages to be acknowledged before a justice of the peace where the mortgagor resides, i. e., in the town in which he resides.

In our opinion, this phrase "where the mortgagor resides" is a local term and means to designate the justice of the peace of the town where the mortgagor resides as the only person, other than the county judge of the county, before whom a valid acknowledgment of a chattel mortgage can be taken. (*National Loan Co. v. Jones,* 232 Ill. App. 648.)

The chattel mortgage given by Grover C. Watkins to appellee, not having been acknowledged in accordance with law, was not a valid lien as against the Mt. Auburn State Bank and, therefore, any foreclosure and sale under said mortgage to appellee was void as against said Mt. Auburn State Bank.

While this precise question was not raised by appellant in the court below, it is sufficiently covered. Appellant requested the court to hold the following proposition: "The chattel mortgage given by Grover C. Watkins to W. H. Watkins is void in so far as it affects any interests and property levied upon by the sheriff, D. L. Dunbar, upon the execution issued on the Mt. Auburn State Bank." This proposition the court declined to hold and marked the same "refused."

In order to entitle appellee to recover, it was necessary for him to affirmatively show that the chattel mortgage was a valid subsisting lien as against the Mt. Auburn State Bank, and as the evidence failed to so show, it was the duty of the court to find the issues against him even though this specific point was not called to the attention of the court. (*Hazel v. Hoopeston-Danville Motor Bus Co.*, 310 Ill. 38.)

The judgment of the circuit court is reversed.

*Reversed with finding of facts.*

Finding of facts: We find that the chattel mortgage given by Grover C. Watkins to appellee was void as against the rights and interests of the Mt. Auburn State Bank and that appellant was in possession of said property by virtue of a levy of an execution which was a valid lien upon said property.