CHARLES SCURRY, Appellant, v. QUAKER OATS COMPANY et al., Appellees; ELMER OSTHEIMER, Intervener, Appellant.

**CHATTEL MORTGAGES:** Sale of Property—Right to Proceeds. A chattel mortgagee who consents to a sale of the mortgaged property on condition that the proceeds be *paid to him* acquires a right to such proceeds superior to the rights of the garnishing creditor of the mortgagor. (See Book of Anno., Vol. 1, Sec. 10015, Anno. 125 *et seq.*)

Headnote 1: 11 C. J. p. 633; 28 C. J. p. 241.

*Appeal from Hardin District Court.*—H. E. FRY, Judge.

MAY 7, 1926.

ACTION by the mortgagee, to recover the proceeds of the sale of mortgaged personal property from the purchaser. A judgment creditor of the mortgagor's claimed the proceeds, under a garnishment of the purchaser. From a judgment in favor of the judgment creditor, the plaintiff-mortgagee appeals. —*Reversed.*

*E. H. Lundy* and *R. R. Bateson,* for appellants.

*Burnstedt & Hemingway* and *Aymer D. Davis,* for appellees.

VERMILION, J.—The plaintiff and appellant, Scurry, held a chattel mortgage upon certain corn, executed by the intervener and appellant, Ostheimer, to secure the payment of a note. Ostheimer sold and delivered the corn to the defendant Quaker Oats Company. After the delivery of the corn, but before payment therefor, the appellee Stauffer-Van Avery Company, a judgment creditor of Ostheimer's, garnished the Quaker Oats Company, as a supposed debtor of Ostheimer's. The Quaker Oats Company paid the money into court. The contest is between the appellant Scurry, who claims that Ostheimer sold the corn as his agent, and that the proceeds belonged to him, and not to Ostheimer, and the appellee Stauffer-Van Avery Company, claiming that Scurry agreed that Ostheimer might sell the corn, and has no lien upon or right to the proceeds, as against its garnishment.

The action is at law, and was tried to the court without a jury. The judgment appealed from upheld the claim of the Stauffer-Van Avery Company under its garnishment.

The appellee, of course, acquired no higher or superior right to the proceeds of the corn by virtue of its garnishment than Ostheimer, its debtor, had. *Bank of Hinton v. Swan,* 156 Iowa 715; *Hamm Brew. Co. v. Flagstad,* 182 Iowa 826; *Acme H. & M. F. Co. v. Metropolitan Nat. Bank,* 198 Iowa 1337. It is also true that by virtue of the chattel mortgage on the corn the mortgagee acquired no lien upon the proceeds. *Harlan v. Ash,* 84 Iowa 38; *Hartwig v. Iles,* 131 Iowa 501; *First Nat. Bank v. Security Tr. & Sav. Bank,* 191 Iowa 842. But we have recognized the rule that, where the mortgagee agrees that the mortgagor may sell the property and the proceeds be paid to the mortgagee, or turned over to or retained by some third party for him, or agrees that the property be sold in the name of the mortgagee, a trust will be impressed upon the proceeds in favor of the mortgagee, and against one whose claim is no greater than that of the mortgagor. *Hoyt v. Clemans,* 167 Iowa 330; *Hamm Brew. Co. v. Flagstad,* supra. The right of the mortgagee will, in such case, be protected in an action at law, as against the claim of a garnishing creditor of the mortgagor's; and this is true although the mortgagor has violated his agree-

ment with the mortgagee, and sold the property in his own name. *Hamm Brew. Co. v. Flagstad*, supra.

It is not disputed that Scurry, the mortgagee, consented that the mortgagor should sell the corn. So far, there is no room for controversy; but at this point it is contended by plaintiff that he only consented that Ostheimer might sell the corn as his agent, and that the proceeds belonged to him, and not to Ostheimer, and that, therefore, appellee acquired no right under its garnishment. Scurry testified:

"He [Ostheimer] said that he was willing to sell it at that time, but the market would be better later; and I told him, I needed the money pretty bad, but that, if he thought it would be a little better, I wouldn't push him, and to go ahead and sell it when he thought he could do the best. He said that was the only thing he had to get the money out of, to pay me with. He said he would sell the corn and bring the money to me."

Ostheimer testified, as a witness for plaintiff:

"Before the corn was sold to the Quaker Oats Company, through Mr. Landon, at Hubbard, I had a talk with Mr. Scurry about paying the note, which was past due, and told him that I was not in a condition to pay it until I sold the corn; and the corn market wasn't very good. He said he needed the money, but to hold the corn, and, if I thought the market would be any better, that I could sell it at any time, and bring him the money; and I told him I would."

This testimony is undisputed.

Since the appellee, by virtue of its garnishment, acquired only the right of the mortgagor, the controversy must be viewed as one arising between the mortgagee and the mortgagor to the proceeds of the sale in the hands of the purchaser. There is here no question of the intervening rights of an innocent third party. As between the mortgagor and the mortgagee, the former acquired no right to the proceeds of the corn. The undisputed testimony is that the agreement between them was that the corn was to be sold by the mortgagor, and the money brought to the mortgagee. The sale was consented to by the mortgagee only on the condition that the proceeds should come to him. What the situation might have been, if the money had

been paid to the mortgagor, we have no occasion to determine. It has not reached his hands; and, under his agreement with the mortgagee, he was to acquire no right to it, as between them. He was but the agent of the mortgagee, to sell the corn and bring the money to him. We find nothing in the testimony inconsistent with this conclusion. It is undisputed that the mortgagor sold the corn in his own name, and there is testimony that he asked for an advance of a part of the purchase price, for some purpose of his own. But, as we have seen, if he had in fact violated his agreement, that fact would have given neither him nor a garnishing creditor of his any right superior to that of the mortgagee. There was testimony that the mortgagee said that, if the money had been paid to the mortgagor, the latter would have taken care of him. This was no more than stating his reliance on the agreement that the money was to be brought to him. If the mortgagor were asserting a right to the proceeds, as against the mortgagee, for whose benefit he had sold the corn, under an agreement to bring the money to him, there can be no doubt that a trust would be impressed upon the fund for the benefit of the mortgagee. *Hoyt v. Clemans,* supra; *Hamm Brew. Co. v. Flagstad,* supra; *Jones v. Home Sav. Bank,* 200 Iowa 1186.

As said in *Hamm Brew. Co. v. Flagstad,* supra, the equitable right of the mortgagee cannot be ignored, in determining the liability of the garnishee to a creditor of the mortgagor's. If the mortgagee has shown that he has a right, either in law or in equity, to the fund in the hands of the garnishee, this will protect the garnishee against liability to the garnishing creditor of the mortgagor.

We are of the opinion that the judgment below cannot, on the undisputed testimony, be sustained. It becomes unnecessary to consider other questions presented.

The judgment is—*Reversed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.