**CURTIS v. HART et al.**

No. 10585.

Court of Civil Appeals of Texas. Dallas.

March 15, 1930.

J. J. Fagan, of Dallas, for appellant.

J. L. Lipscomb and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for ap-.pellees.

LOONEY, J.

G. M. Curtis, payee, sued W. A. Hart, maker on a promissory note for $720, given for the rent of farm lands located a few miles from the town of .Mesquite, Dallas county, Tex. The note was secured by the statutory landlord's lien on all cotton and other produce raised on the farm during the year 1920. It appears that Curtis, the landlord, waived his lien and permitted Hart to sell the cotton raised on the premises (about 18 bales), the proceeds of which were deposited by Hart to his own credit in the Guaranty State Bank of Mesquite. The bank was brought in by plaintiff as a defendant, and recovery was sought against it on the theory that the proceeds of the cotton deposited by Hart were impressed with a trust in favor of the landlord to the extent of the rent note, and that the bank was liable to plaintiff for conversion of said fund, in that, it induced Hart to violate the trust by causing him to check out and pay same on an antecedent debt owing by him to the bank. On suggestion of the death of Mr. Curtis, his wife and children were substituted as plaintiffs, and the First State Bank of Mesquite, having succeeded to the assets and liabilities of the Guaranty State Bank, was also brought in as defendant and recovery sought against it.

When plaintiff rested, defendant moved for an instructed verdict, which was denied by the court, and at the conclusion of the evidence, defendant banks again moved for an instructed verdict, which was also denied.

The court instructed a verdict against Hart in favor of plaintiffs on the note, and as to the two banks the case was submitted to a jury on special issues. These issues were answered ffavorably to the plaintiffs, and the court thereupon rendered judgment in their favor against Hart for the full amount of the note, interest, and attorney fees, and against the two banks for the sum of $898.50, being the amount of the proceeds of the cotton with interest thereon, applied by Hart on his indebtedness to the Guaranty State Bank. The banks have appealed from this judgment.

The first assignment and related proposition, presented for consideration, complain of the alleged error of the court in refusing to sustain the general demurrers urged by appellants to plaintiffs' petition.

█ We overrule this assignment. Plaintiffs sought to recover damages against the banks for converting the proceeds of rent cotton deposited by Hart in the Guaranty State Bank, alleged to have been .impressed with a trust in favor of plaintiff to the extent of the rent note, and that said bank induced Hart,

the trustee, to violate the trust by applying the fund to the payment of an antecedent debt held against him by the depository bank. Plaintiffs' petition was good as against a general demurrer.

Appellants also urged a number of assignments, based upon alleged erroneous rulings of the trial court in admitting and rejecting evidence, and also in overruling exceptions to the charge. Several of these assignments, in our opinion, present reversible error; but we pretermit discussion of same because we think the court erred in refusing to instruct a verdict for appellants—hence the case must be reversed and judgment rendered in their favor.

Appellees concede that, as Mr. Curtis waived the landlord's lien by permitting Hart to sell the cotton, they had no lien on the proceeds deposited in the bank to Hart's credit. They take their stand on the proposition that the fund was impressed with a trust in favor of the landlord, which was violated by the depository bank inducing Hart to apply the deposit to the payment of an antecedent debt it held against him.

The rule of law contended for by plaintiffs is found in the doctrine announced by Judge Gaines in Coleman v. First Nat'l Bank, 94 Tex. 605, 63 S. W. 867, 869, 86 Am. St. Rep. 871, as follows: "The principle is that, since the trustee has control of the money, and has deposited. it in the bank to be drawn out upon his checks, he has the right to draw for it, and the bank is not permitted to deny that right. When the beneficiary asserts his claim, and gives the bank notice, the rule does not apply. In the New Jersey case just cited the general rule was followed even as to the custodian of public funds. The principle does not allow the bank to collude with the depositor in a misapplication of the trust fund, nor. does it permit the bank to apply the fund to the individual debt due to it from the trustee." To the same effect, see Interstate Nat'l Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; Silisbee State Bank v. French, etc., Co., 103 Tex. 629, 132 S. W. 465, 34 L. R. A. (N. S.) 1207; First State Bank v. Hill (Tex. Civ. App.) 141 S. W. 300.

█ The right of plaintiffs to recover against the banks is necessarily dependent upon the existence whether or not of a trust relationship between Hart the tenant and Curtis the landlord. If the proceeds arising from the sale of the cotton raised on the Curtis' farm were, when deposited in the bank by Hart, impressed with a trust in favor of Mr. Curtis to the extent of the rent note, plaintiffs should prevail, and this without regard to whether the bank did or did not have knowledge or notice of the existence of the trust. This because the bank could not be permitted to occupy the vantage ground of innocency, if it

applied the trust fund in satisfaction of an antecedent debt due it by the trustee.

Mr. Curtis died pending the suit, and the only witness who testified on this issue was Mr. Hart. He testified that Mr. Curtis told him to sell and not hold the cotton; that nothing was said as to what should be done with the proceeds; that no arrangement was made with respect to depositing the proceeds; that he sold the cotton to street buyers and deposited the proceeds to his credit in the bank, to be used as his other money in paying his obligations and not specifically for the purpose of paying the Curtis note. At another place in his testimony, he said: "It is a further fact that Mr. Curtis gave me full authority to sell the crops and produce raised on the farm rented by me from him during the years 1919 and 1920, and place the money in the bank to my credit, and to pay it out on my check without any further authority from him."

Mr. Ed. F. Vanston, who was the active vice president of the depository bank, testified that Mr. Curtis never objected to the bank receiving the money and applying same on the note held by it against Hart; that he never made any demands or claims on the bank, or said anything about it.

██ This testimony is undisputed and, in our opinion, disproves the existence of an express trust relationship between Hart and Curtis as to the proceeds of the cotton. However, the question remains: Will such relationship be implied from the situation? We do not think so. When Mr. Curtis yielded the advantage the law gave him, that is, waived his landlord's lien on the cotton and permitted Hart to sell without stipulating that the proceeds should be charged with the payment of the rent note, the rights of Curtis thereafter were not greater or other than those of a general unsecured creditor. See Pharis v. Leachman, 20 Ala. 682; Au Sable River Boom Co. v. Sanborn, 36 Mich. 358, 363; 37 C. J. 333, § 51.

It may be conceded that the findings of the jury were justified by evidence to the effect that Hart intended to pay the Curtis note from the proceeds of the cotton; that the bank, through its officers, had notice of the indebtedness and of Hart's intention, and induced him to use the fund to pay his indebtedness to it—yet these facts are but evidentiary, and must be held for naught, in the absence of a showing that the fund was impressed with a trust, for Curtis having waived his landlord's lien, and consequently all rights incident thereto, held an unsecured debt just as though the lien had never existed.

Because the trial court erred in refusing to direct a verdict for appellants, its judgment is reversed and here rendered in their favor.

Reversed and rendered.

VAUGHAN, J., while concurring in the disposition made of this case, dissents to the following holding: "When Mr. Curtis yielded the advantage the law gave him, that is, waived his landlord's lien on the cotton and permitted Hart to sell without stipulating that the proceeds should be charged with the payment of the rent note, the rights of Curtis thereafter were not greater or other than those of a general unsecured creditor."